IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| RICHARD DIAZ and ) | |
| GAMEDAWG, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 7:13-cv-853-TMP |
| ) | |
| GLEN PLAID, LLC, d/b/a ) | |
| Original Houndstooth, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

This cause is before the court on the defendant's motion to dismiss[1] the action on the ground that an indispensable party, the Board of Trustees of the University of Alabama ("the University"), has not been and cannot be joined as required by Fed. R. Civ. P. 19. Defendant Glen Plaid argues that it has been licensed by the University to use a trademark, consisting of the silhouette of an elephant filled with a houndstooth pattern (referred to as the "houndstooth elephant"), owned by the University, making the University an indispensable party in plaintiffs' action for infringement of a very similar registered trademark plaintiffs claim to own. Plaintiffs counter that the defendant lacks standing to assert the University's trademark-ownership argument and that the University is not an indispensable party under Rule 19.

---

[1] The plaintiffs and named defendant have consented to the exercise of magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Docs. 12 & 16. The "elephant" in the room, however, is the Board of Trustees of the University of Alabama. Although it is not a party in this action, it is directly interested in the court's resolution of the Rule 19 motion filed by the defendant, because one of the options available to the court is allowing this action to proceed, even though it would have a possibly prejudicial impact on the interests of the absent University in the trademark at issue. Because § 636(c)(1) requires expressly only the "consent of the parties," the undersigned magistrate judge has complete and proper authority to exercise full jurisdiction in the case.

I.  Background Facts

The basic facts pertinent to this motion are essentially undisputed.  On December 10, 2010, plaintiffs filed their application with the United States Patent and Trademark Office ("USPTO") to register the following trademark:



The USPTO registered the mark to plaintiff Richard Diaz on July 12, 2011, as register number 3,993,520.  The mark was registered for uses associated with apparel.  Diaz and his company, GameDawg LLC, have marketed apparel bearing the mark since December 2010, principally to college-sports fans aligned with the University of Alabama sports teams, both at sporting events and tradeshows.

A year earlier, in May 2010, the University opposed the granting of trademark registration to an entity known as The Tuscs LLC for the following mark:



The opposition was based on the University's registered ownership of several elephant-motif trademarks as well as its claim that the houndstooth pattern has long been associated with the University and its former football coach, Paul Bryant.  The opposition was sustained by the USPTO when The Tuscs LLC defaulted by failing to respond to it in August of 2010.  There is

no indication in the evidence in this case that the University made known any opposition at the time plaintiff Diaz applied to register his similar trademark in 2011.

On March 1, 2011, defendant Glen Plaid LLC entered into a licensing agreement with the University of Alabama for use of a "houndstooth elephant" trademark, although no party has offered an example of such a mark claimed by the University. On July 17, 2011, defendant Glen Plaid become part of the "University of Alabama – Houndstooth Program," under which defendant was given a license to use the houndstooth pattern in return for a royalty to the University.

On November 2, 2011, plaintiffs' counsel mailed a letter to Mark Gatewood at The Original Houndstooth, a clothing store in Tuscaloosa, Alabama, operated by defendant Glen Plaid, asserting that clothing sold by the store bore a trademark that infringed the mark registered to the plaintiffs and further demanding that the store stop using the mark within seven days. The trademark used by the defendant and challenged by the plaintiffs is substantially the following:



It is unclear what, if anything, occurred between the parties in the interim, but plaintiffs filed the instant complaint on May 7, 2013, alleging trademark infringement under the Lanham Act, a violation of the Alabama Deceptive Trade Practices Act, and a common law claim for unfair competition. The only named defendant in the complaint is Glen Plaid LLC; the University of Alabama is not named as a defendant. The complaint seeks a permanent injunction

against defendant to stop the alleged infringement, an accounting of profits by the defendant, damages, and other equitable and legal relief.

Two months later, on July 11, 2013, the Board of Trustees of the University of Alabama and Paul W. Bryant, Jr., jointly filed a challenge in the USPTO to cancel the trademark registration secured by plaintiff in July 2011.  That challenge remains pending.

II.  Discussion

Defendant's motion seeks dismissal of the complaint on the single argument that the University of Alabama, as the owner of the mark licensed to the defendant, is both a necessary and an indispensable party under Rule 19 of the Fed. R. Civ. P., which cannot be joined in this action because of its Eleventh Amendment immunity from suit in federal court.  Because the University cannot be joined as a defendant with respect to plaintiffs' claims, defendant contends Rule 19(b) requires dismissal of the complaint against it as well.

Rule 19 is designed to deal with whether all appropriate parties necessary for a complete resolution of the controversy have been joined in the case.  The rule requires a three-step[2] analysis: first, assessment of whether a non-joined entity is required for a complete resolution of the controversy; second, whether it is feasible to join the entity into the lawsuit; and third, if it is not feasible, whether equity and good conscience requires dismissal of the lawsuit.  Rule 19(a) requires that a person be joined in the action if ---

---

[2]  Some courts describe it as a two-step analysis, collapsing together the first and second steps described above in text.  See, e.g. Hardy v. IGT, Inc., 2011 WL 3583745 (M.D. Ala. Aug. 15, 2011); United States v. Janke, 2009 WL 2525073 (S.D. Fla. Aug. 17, 2009).  Although Rule 19's structure suggests a two-prong analysis, Rule 19(a) appears to involve two distinct questions: whether a non-joined entity is required to be joined to assure full and consistent relief, and whether it is feasible to do so.  For this reason, the court prefers the three-step analysis used above.

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

However, such a person must be joined as a party only if he "is subject to service of process and [his] joinder will not deprive the court of subject-matter jurisdiction."  Fed. R. Civ. P. 19(a). Rule 19(a), therefore, asks two questions: is the non-joined person one whose absence will cause one or more of the circumstances described, and can that person be served with process without his joinder depriving the court of subject-matter jurisdiction.  Under the circumstances of any particular case, Rule 19(b) is not implicated if *either* the absence of non-joined person does not involve the concerns expressed in the rule *or* the person can be feasibly joined in the action. These determinations are fact-specific to each case.

Rule 19(b) addresses what happens if the non-joined person cannot be feasibly joined in the action.  If the non-joined person cannot be feasibly joined in the action, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  The rule identifies several nonexclusive[3] factors guiding this decision:

---

[3]  The Supreme Court has made clear that the list of factors set out in Rule 19(b) is nonexclusive in that there may be other, unlisted factors that are pertinent to any particular case.  See Republic of Philippines v. Pimentel, 553 U.S. 851, 862, 128 S. Ct. 2180, 2188, 171 L. Ed. 2d 131 (2008). The ultimate question in Rule 19(b) is whether "equity and good conscience" dictate dismissal of the case or allow it to proceed only with the existing parties.

    (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

    (2) the extent to which any prejudice could be lessened or avoided by:

        (A) protective provisions in the judgment;

        (B) shaping the relief; or

        (C) other measures;

    (3) whether a judgment rendered in the person's absence would be adequate; and

    (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

    It is clear from the facts of this case that the first step of the analysis is met by the apparent claim of the University to ownership of the mark registered by plaintiffs and on which plaintiffs have sued defendant for infringement. The University's filing of a challenge in the USPTO to cancel the mark now claimed by plaintiff certainly indicates its claim of ownership to the mark. Although that challenge remains pending and unresolved, it shows that the University's claim of ownership is not frivolous. For purposes of Rule 19(a), the University's claim of ownership in the mark makes it a "person" required to be joined in this action. Both plaintiff and the University claim ownership of the mark in question, so it is clear that complete relief between the existing parties cannot be achieved without the presence of the University. Plainly, a determination that plaintiffs are the owners of the mark would "impair or impede" the University's ability to protect its interest in the mark. An injunction prohibiting infringement by the defendant, who claims the right to use the mark only be way of a license from the University, would be tantamount to a finding that the University has no ownership interest in the mark. Additionally, such a determination would leave Glen Plaid "subject to a substantial risk of

incurring double, multiple, or otherwise inconsistent obligations because of the interest." An injunction in this action would prohibit defendant from using the mark while subjecting it to an inconsistent obligation to pay royalties under the license agreement with the University. Therefore, the court finds that the University is required by Rule 19(a) to be joined in this action.

The complaint did not attempt to join the University as a defendant, and it is silent as to why the plaintiffs did not do so. Rule 19(c) imposes a duty on the pleader "asserting a claim for relief," to allege "(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person." Although plaintiffs appear to have been aware of defendant's claim of a right to use the mark as a licensee of the University, the University is not identified in the complaint as a party required to be joined, if feasible. Defendant Glen Plaid asserts that plaintiffs could not join the University because of its Eleventh Amendment immunity, and the plaintiffs have not disputed this assertion, except to argue that Glen Plaid lacks standing to assert the University's immunity for it.[4] This is ironic given

---

[4] There can be little doubt that the Board of Trustees of the University of Alabama is entitled to Eleventh Amendment immunity as an arm of the State of Alabama. As another judge of this court has explained:

> The Eleventh Circuit has determined that state universities in Alabama, as arms of the state, are entitled to Eleventh Amendment immunity. Harden v. Adams, 760 F.2d 1158, 1163 (11th Cir. 1985) (holding that the Eleventh Amendment bars suit under 42 U.S.C. § 1983 against Troy State University); see also Davis v. Alabama State Univ., 613 F.Supp. 134, 139–40 (M.D. Ala. 1985) (holding that the Eleventh Amendment protects Alabama State University from former employee's § 1983 suit). Additionally, in Eubank v. Leslie, 210 Fed. Appx. 837, 844–45 (11th Cir. 2006), a panel of the Eleventh Circuit specifically applied this doctrine to the University of Alabama Board of Trustees, deeming it a "state agency" and affirming the district court's decision that the plaintiff's civil rights claims against the Board under 42 U.S.C. §§ 1983 and 1985 were barred by state sovereign immunity.

Harris v. Bd. of Trustees Univ. of Alabama, 846 F. Supp. 2d 1223, 1233 (N.D. Ala. 2012).

plaintiffs' failure under Rule 19(c) to identify the University as an absent interested person and to state the reason why it was not joined.

The argument advanced by the defendant, however, is not a question of standing, but the assertion of *its own* right under Rule 19 to the dismissal of a lawsuit in which an indispensable party is not and cannot be joined.  Cf. Republic of Philippines v. Pimentel, 553 U.S. 851, 861, 128 S. Ct. 2180, 2187-88, 171 L. Ed. 2d 131 (2008) (holding that Court had jurisdiction on appeal because parties *other* than the absent parties moved to dismiss the action under Rule 19(b)).  The very nature of Rule 19 examines whether a party joined in the action is entitled "in equity and good conscience" to the dismissal of the case precisely because of the absence of a necessary and indispensable person or entity.  Raising a Rule 19 issue does not mean that the joined party is asserting the right of the absent person to remain absent but, rather, the joined party is invoking its own right to dismissal of the case due to the absence.

The question at the second step of the Rule 19 analysis is whether joinder of the absent person is feasible, and the court believes in this case it is not.  Importantly, the parties seem to believe it is not.  Plaintiffs did not attempt to name the University as a defendant in their original complaint, nor have they moved for leave to add the University by amendment.  The defendant concedes that the Eleventh Amendment bars suit directly against the University.  Whether an absent party can be feasibly added to the lawsuit is a practical question.  In making the assessment whether an absent person can be feasibly joined, "'pragmatic concerns, especially the effect on the parties and the litigation,' control."  Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc., 669 F.2d 667, 669 (11th Cir. 1982).  While it may be argued that, because Eleventh Amendment immunity does not preclude service of process on the University or destroy the court's subject-matter jurisdiction over the rest of the action, it is possible to join the University

as a defendant, it would be short-lived. Eleventh Amendment immunity affects the jurisdiction of the court, and a state sovereign is entitled to it unless one of three narrow circumstances exists: abrogation by Congress under its Fourteenth Amendment power, explicit waiver by the state sovereign, or application of the Ex parte Young doctrine for prospective relief against a state official (but not the State itself).  See Seminole Tribe of Florida v. State of Fla., 11 F.3d 1016, 1021 (11th Cir. 1994) *aff'd sub nom.* Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).  In the absence of something suggesting the presence of one of these exceptions, a court must assume Eleventh Amendment immunity because it goes directly to constitutional limitations on the Article III power of the court.  Unlike a mere affirmative defense that must be pleaded (or it is waived), Eleventh Amendment immunity partakes of jurisdictional limitations, which requires the court assume the immunity exist, unless and until the party invoking jurisdiction proves that it does not.  See Edelman v. Jordan, 415 U.S. 651, 678, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) ("[T]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court.").  That is especially true in a case like this, in which the plaintiffs have chosen not to join the University as a defendant.  Not being in the case as a party, the University has no opportunity to express whether it relies upon or waives its immunity, and this places upon the plaintiffs the burden of pleading and proving that the immunity does not exist.[5]

---

[5]   Plaintiffs cite the Federal Circuit case of Vas-Cath, Inc., v. Curators of the University of Missouri, 473 F.3d 1376 (Fed. Cir. 2007), for the proposition that a voluntary initiation of a litigation-style proceeding in an administrative agency is a waiver of Eleventh Amendment immunity by the initiating state entity.  While this is true, it does not support the argument here that the University is subject to suit in *this* action simply because it filed the USPTO challenge.  Although the University may have waived its immunity as to judicial proceedings flowing from the administrative proceedings it commenced, that waiver does not bleed over to this case.

Plaintiffs may not decline to join the University as a defendant and then argue that it has not asserted its immunity. Without some affirmative allegation from the plaintiffs showing that the immunity does not exist, the court has no reason to assume other than that the immunity exists and the University will invoke it.

In this case, neither the complaint nor any other filing suggests that Eleventh Amendment immunity does not apply to shield the University from this action. It is clear that Congress has not constitutionally abrogated Eleventh Amendment immunity in the context of trademark litigation. See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675, 119 S. Ct. 2219, 2226, 144 L. Ed. 2d 605 (1999). There is nothing in this case to suggest that the University has waived its immunity and consented to suit against it. Whether a state sovereign has waived its constitutional sovereign immunity requires a "stringent test." Id. "We will find a waiver either if the State voluntarily invokes our jurisdiction, Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284, 26 S. Ct. 252, 50 L. Ed. 477 (1906), or else if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction, Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 54, 64 S. Ct. 873, 88 L. Ed. 1121 (1944)." Id. at 675-76, 119 S. Ct. at 2226. Neither circumstance exists here. Because Eleventh Amendment immunity partakes of jurisdictional attributes, it is incumbent on the plaintiffs to plead the circumstances from which the court might infer waiver, and they have not done so. That the University has filed a USPTO challenge to cancel plaintiffs' mark does not mean that it has waived its immunity in this case. Sovereigns entitled to the immunity may "pick and choose" the cases to which they are willing to consent.

For these reasons, the court finds that it is not feasible to join the University as a defendant in this action. Although it is technically true that process can be served on it and its presence would not defeat the subject-matter jurisdiction of the court, such an effort would be futile and short-lived. There is no evidence to suggest other than that the University would invoke its immunity, requiring the court immediately to dismiss it as a party. Neither party has suggested otherwise. Viewing the feasibility of joinder pragmatically, it is not practical to order the joinder of the University because it will come to nothing.

Having determined that the joinder of the University is "required," but that it cannot be accomplished feasibly, the court is left with weighing whether "equity and good conscience" requires dismissing the case or allowing it to proceed only with the existing parties. Fed. R. Civ. P. 19(b). Factors bearing on this determination include (1) whether the absent person or existing parties will be prejudiced by a judgment, (2) whether relief can be limited or shaped to avoid or reduce prejudice, (3) whether a judgment without the absent person will be adequate, and (4) whether the plaintiff is left with an adequate alternative remedy if the case is dismissed. Fed. R. Civ. P. 19(b); Republic of Philippines v. Pimentel, 553 U.S. 851, 128 S. Ct. 2180, 171 L. Ed. 2d 131 (2008). Weighing these factors, the court is persuaded that the case must be dismissed.

As to the first factor, there can be little doubt that a judgment in the absence of the University will prejudice both the University and defendant. As mentioned above, the central issue in this case is the ownership of the "houndstooth elephant" trademark, claimed by both the University and the plaintiffs. Resolution of plaintiffs' claim of infringement by defendant directly implicates the University's ownership claim as Glen Plaid's claim of right to use the mark flows from a license granted by the University. A determination that plaintiffs are the owner of the mark impairs or clouds the University's claimed ownership interest and it would

subject the defendant to the conflicting and inconsistent positions as to whether the University has the right to license the mark and enforce the license agreement against it.  The University can continue to claim that it owns the mark and can license it, while the court's judgment in its absence would state that the mark is owned by plaintiffs.  Because the ownership of the mark is the central issue in the case, there is no readily apparent way to shape or limit any judgment to avoid or reduce the prejudice under the second factor.  Even if relief in this case is limited only to enjoining Glen Plaid from using the mark, the judgment would have the practical effect of impairing the University's claim of ownership in the mark by casting doubt on it.

Under the third factor, a judgment in favor of the plaintiffs would not be adequate to settle their ownership rights in the mark precisely because the University, not being a party to the judgment, would not be bound by it.  The Supreme Court has explained that the purpose of the "adequacy" factor is not necessarily limited to the adequacy of the judgment to the parties, but also "to the 'public stake in settling disputes by wholes, whenever possible.'"  Republic of Philippines v. Pimentel, 553 U.S. 851, 870, 128 S. Ct. 2180, 2193, 171 L. Ed. 2d 131 (2008) (quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968)).  While an injunction could prevent defendant Glen Plaid from using the mark, it would not preclude the University from continuing to license it to other competitors.  At the end of the litigation, there would still be competing claims of ownership in the mark.  Thus, not only would the judgment put Glen Plaid in a conflicted and inconsistent position, it would do so without adequately addressing the plaintiffs' ultimate ownership rights or resolving the whole of the dispute.

Finally, under the fourth factor, even if the case is dismissed, plaintiffs retain an adequate forum for addressing the controversy over its ownership rights.  Plaintiffs acknowledge that the

University has elected to file a trademark challenge to the plaintiffs' mark in the USPTO, seeking to cancel the mark.  Although it is true that the cancellation proceeding does not directly address the alleged infringement by Glen Plaid, it may ultimately resolve the conflicting claims of ownership between plaintiffs and the University, Glen Plaid's licensor.  Thus, plaintiffs are not left entirely without a remedy.  If they succeed in defending their ownership of the mark, they are in a much stronger position to pursue an infringement action thereafter, notwithstanding the absence of the University from such litigation.

The court has found helpful the Supreme Court's Rule 19 analysis in the case of Republic of Philippines v. Pimentel, 553 U.S. 851, 128 S. Ct. 2180, 171 L. Ed. 2d 131 (2008), even though it was not in the patent and trademark context.  In that case, an interpleader was filed for the determination of ownership of assets alleged to have been stolen by former Philippines president Ferdinand Marcos.  Among the multiple claimants to the assets named as defendants were the Republic of the Philippines ("the Philippines") and the Philippine Presidential Commission on Good Governance (the "Commission"), both of which asserted their immunity from suit as foreign sovereigns and were dismissed from the action.  In doing so, the trial court concluded under Rule 19(b) that the interpleader could go forward among the remaining claimants despite the absence of the Philippines and the Commission. Pending at the time of the interpleader was a case in the Sandiganbayan, a special Philippine court, also dealing with the question of ownership of the stolen assets.  The Ninth Circuit Court of Appeals affirmed.  The Supreme Court reversed, saying "We conclude the Court of Appeals gave insufficient weight to the foreign sovereign status of the Republic and the Commission, and that the court further erred in reaching and discounting the merits of their claims."  Id. at 855, 128 S. Ct. at 2184.

The analytical importance of the case lies in the fact that it dealt with persons who could not be feasibly joined in the litigation due to their sovereign immunity. While the University of Alabama is not a *foreign* sovereign, it is nonetheless clothed with the sovereign immunity[6] of the State of Alabama, making its status comparable to that of the Philippines and the Commission, at least for Rule 19(b) purposes.[7] As already discussed, there is nothing in the record of the instant case to suggest that the University would not assert its Eleventh Amendment immunity, just as the Philippines and the Commission asserted their sovereign immunity.

The Court's discussion of the weight sovereign immunity should be given under the Rule 19(b) standard is instructive. First, the Court noted that Rule 19(b) does not always require dismissal of the case when a required person cannot be joined feasibly. Whether to dismiss the case is an equitable decision that "will turn upon factors that are case specific." Republic of Philippines v. Pimentel, 553 U.S. 851, 863, 128 S. Ct. 2180, 2188, 171 L. Ed. 2d 131 (2008). A particularly important factor in that case was the sovereign immunity of the Philippines and the Commission. The Court observed that the lower courts, in allowing the interpleader to proceed to judgment in the absence of the Philippines and the Commission, failed to give adequate consideration to their sovereign immunity, because "[g]iving full effect to sovereign immunity promotes the comity interests that have contributed to the development of the immunity

---

[6] The Eleventh Amendment was adopted for the purpose of preserving the sovereign immunity of the States against actions in the federal courts. See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 669, 119 S. Ct. 2219, 2223, 144 L. Ed. 2d 605 (1999) ("[W]e have long recognized that the Eleventh Amendment accomplished much more: It repudiated the central premise of Chisholm that the jurisdictional heads of Article III superseded the sovereign immunity that the States possessed before entering the Union.").

[7] Indeed, it can be argued that state sovereign immunity is more robust than foreign sovereign immunity because "state sovereign immunity, unlike foreign sovereign immunity, is a *constitutional* doctrine that is meant to be both immutable by Congress and resistant to trends." Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 686 n.4, 119 S. Ct. 2219, 2231, 144 L. Ed. 2d 605 (1999) (italics in original).

doctrine." Id. at 866, 128 S. Ct. at 2190.  Turning to earlier authority dealing with the intersection of joinder and sovereign immunity claimed by agencies of the United States, the Court wrote:

> Though this Court has not considered a case posing the precise question presented here, there are some authorities involving the intersection of joinder and the governmental immunity of the United States. See, e.g., Mine Safety Appliances Co. v. Forrestal, 326 U.S. 371, 373–375, 66 S. Ct. 219, 90 L. Ed. 140 (1945) (dismissing an action where the Under Secretary of the Navy was sued in his official capacity, because the Government was a required entity that could not be joined when it withheld consent to be sued); Minnesota v. United States, 305 U.S. 382, 386–388, 59 S. Ct. 292, 83 L. Ed. 235 (1939) (dismissing the action for nonjoinder of a required entity where the United States was the owner of the land in question but had not consented to suit). The analysis of the joinder issue in those cases was somewhat perfunctory, but the holdings were clear: A case may not proceed when a required-entity sovereign is not amenable to suit.  These cases instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign.

Id. at 866-67, 128 S. Ct. at 2190-91.  The Court stressed that the claims of the Philippines and the Commission were not frivolous and that proceeding with the interpleader in their absence clearly risked injury to their interests in the interpleaded assets.  Where sovereign immunity is the bar to joining such required parties, "dismissal of the action must be ordered."

Once again, although the University of Alabama is not a *foreign* sovereign, it is entitled to invoke its sovereign immunity through the Eleventh Amendment.[8]  Its assertion of ownership

---

[8]  It might be argued that the University should be joined to see whether it would invoke sovereign immunity or waive it.  As already discussed, the parties seem to agree that the University would do so, and there is no allegation or evidence in the record to suggest otherwise. While the court could go through the process of ordering the University to be joined by amendment to the complaint, it seems apparent that such would be futile and short-lived, as the University would invoke its immunity immediately, requiring its dismissal and leaving the court and the remaining parties exactly where they are today.  In the absence of something to suggest that the University might consent to being sued in this case, the court is not required to undertake a useless and futile act.  Moreover, it is the plaintiffs who chose *not* to name the University as a

in the mark claimed by plaintiffs is not frivolous, given its decision to pursue a challenge to plaintiffs' mark in the USPTO, coupled with its collection of registered elephant-motif trademarks. Thus, <u>Pimentel</u> seems to suggest that the instant case must be dismissed.

Although the court concludes, under the present circumstances, that "equity and good conscience" requires dismissal of the plaintiff's complaint, the balance of equities could change in the future. The Supreme Court explained:

> The balance of equities may change in due course. One relevant change may occur if it appears that the Sandiganbayan cannot or will not issue its ruling within a reasonable period of time. Other changes could result when and if there is a ruling. If the Sandiganbayan rules that the Republic and the Commission have no right to the assets, their claims in some later interpleader suit would be less substantial than they are now. If the ruling is that the Republic and the Commission own the assets, then they may seek to enforce a judgment in our courts; or consent to become parties in an interpleader suit, where their claims could be considered; or file in some other forum if they can obtain jurisdiction over the relevant persons.

<u>Republic of Philippines v. Pimentel</u>, 553 U.S. 851, 873, 128 S. Ct. 2180, 2194, 171 L. Ed. 2d 131 (2008). Similar changes could occur that may impact the balance of equities in this case. If the USPTO upholds the plaintiffs' mark in the University's cancellation challenge, it increases the strength of the plaintiffs' position and the risk of injury to any interest claimed by the University is less substantial. That shift in the balance of equities might well require a different outcome in a Rule 19(b) analysis. Whether such a shift occurs in the future, the court is required to decide today whether to dismiss this action. Because the absent University is entitled to claim its sovereign immunity under the Eleventh Amendment and allowing the case to proceed would clearly prejudice the interests the University is seeking to protect in the mark, the court believes

---

defendant in the original complaint. They should not be heard to argue now that the court must order them to add the University as a defendant in an amended complaint.

that "equity and good conscience" requires the dismissal of the case without prejudice to the right of the plaintiff to seek a remedy under changed circumstances in the future.

A separate order will be entered.

DONE this 10th day of October, 2013.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE